UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KERRY LYNN REITZ,                )
                                 )   No. CV-11-0302-CI
         Plaintiff,              )
                                 )   ORDER GRANTING PLAINTIFF'S
v.                               )   MOTION FOR SUMMARY JUDGMENT
                                 )   AND REMANDING
CAROLYN W. COLVIN, Commissioner  )
of Social Security,[1]           )
                                 )
         Defendant.              )
                                 )

    BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF
No. 16, 27.  Attorney Thomas Bothwell represents Kerry Lynn Reitz
(Plaintiff); Special Assistant United States Attorney Debra J.
Meachum represents the Commissioner of Social Security (Defendant).
The parties have consented to proceed before a magistrate judge.
ECF No. 6.)  After reviewing the administrative record and briefs
filed by the parties, the court **GRANTS** Plaintiff's Motion for
Summary Judgment, and remands the matter to the Commissioner for

---

    [1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to FED. R. CIV. P. 25(d),
Carolyn W. Colvin is substituted for Michael J. Astrue as the
Defendant in this suit.  No further action need be taken to continue
this suit.  42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff protectively filed for Supplemental Security Income (SSI) on January 7, 2008.  Tr. 138.  She alleged disability due to bilateral sacrolilitis, back pain, depression, post traumatic stress disorder (PTSD), anxiety, and hip and knee injury.  Tr. 151.  At the hearing, her alleged onset date was amended to January 1, 2008.  Tr. 30.  Benefits were denied initially and on reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ), which was held before ALJ Benita A. Lobo on March 2, 2010.  Plaintiff, who was represented by counsel, and vocational expert Crystal Yama (VE) testified.  Tr. 27-51.  On May 7, 2010, the ALJ denied benefits.  Tr. 12-21.  The Appeals Council denied review 5-8), and the matter now is before this court pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson v. Perales,* 402 U.S. 389, 400 (1971).  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett* v. Apfel, 180 F.3d 1094, 1097 (1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

1  disability or non-disability, the finding of the Commissioner is
2  conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
3  1987).

4                    **SEQUENTIAL EVALUATION**

5      The Commissioner has established a five-step sequential
6  evaluation process for determining whether a person is disabled.  20
7  C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S.
8  137, 140-42 (1987).  In steps one through four, the burden of proof
9  rests upon the claimant to establish a prima facie case of
10  entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d
11  920, 921 (9th Cir. 1971).  This burden is met once a claimant
12  establishes that a physical or mental impairment prevents him from
13  engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a),
14  416.920(a).  If a claimant cannot do his past relevant work, the ALJ
15  proceeds to step five, and the burden shifts to the Commissioner to
16  show that (1) the claimant can make an adjustment to other work; and
17  (2) specific jobs exist in the national economy which claimant can
18  perform.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v.*
19  *Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

20                    **STATEMENT OF THE CASE**

21      The facts of the case are set forth in detail in the transcript
22  of proceedings and are briefly summarized here. At the time of the
23  hearing, Plaintiff was 46 years old, unmarried and living with a
24  friend.  Tr. 31.  She testified she graduated from high school and
25  had past work experience as a school custodian and a cook for a
26  senior center.  Tr. 32.  Plaintiff reported she could no longer work
27  due to hip, back, neck and leg pain after she injured herself on the
28  job in about 1998.  Tr. 31-32.  She testified she also had emotional

problems that prevented her from returning to the work place. She stated she could not be around people, could not concentrate, and she gets confused and flustered in a work environment. Tr. 32-33.

**ADMINISTRATIVE DECISION**

At step one, ALJ Lobo found Plaintiff had not engaged in substantial gainful activity since applying for SSI. Tr. 14. At step two she found Plaintiff had severe impairments "Low Back Pain, Left Knee Problems; Bilateral Carpal tunnel Syndrom (CTS); hypertension; and Depression." *Id*. She found Plaintiff's hypertension did not cause severe deficits in function and the diagnosed gastroesophageal reflux disease was non-severe. *Id*. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). Tr. 14-15.

At step four, the ALJ discussed the medical evidence and found Plaintiff's self-reported symptoms and limitations were not credible. Tr. 19. She assessed Plaintiff as having the residual functional capacity (RFC) to:

> [L]ift and carry less than 10 pounds frequently, 10 pounds occasionally; to stand and walk for two hours and to sit for six hours out of an eight hour day; to push and pull within the limits of lifting and carrying; to engage in occasional postural movements, with the exception of never climbing ropes, ladders or scaffolds; to manipulate frequently but grasping would be limited; to see and communicate without restriction and to work within any environment; to understand, recall and carry out simple instructions; and to make simple work related judgments.

Tr. 15-16.

Based on the RFC and VE testimony, the ALJ concluded Plaintiff could not perform her past work. Tr. 20. Proceeding to step five,

the ALJ considered VE testimony and found there was a significant number of jobs in the national economy Plaintiff could perform, such as receptionist, office clerk, and accounting clerk. She concluded Plaintiff was not disabled as defined by the Social Security Act during the relevant period.    Tr. 20-21.

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff argues the ALJ erred when she: (1) improperly rejected the opinions of treating and examining medical providers; (2) did not find PTSD was a severe impairment at step two; (3) failed to fully develop the record; and (4) failed to meet the Commissioner's burden at step five.  ECF No. 17 at 8.    Defendant responds the Commissioner's decision is supported by substantial evidence and free of legal error.  ECF No. 22.

**DISCUSSION**

**A.  Treating and Examining Medical Source Opinions**

Plaintiff contends the ALJ did not give legally sufficient reasons supported by the record for rejecting medical opinions from the following treating physicians: Paul Garrison, M.Ed.; Ricardo Gamez, M.Ed.;[2] James Goodwin, Psy.D.; Alison Mitchell, M.D.; Mahlon

---

[2]    Both Mr. Garrison and Mr. Gamez are identified as treating physicians in Plaintiff's briefing.    ECF No. 17 at 4, 11, 12. However, the record shows neither is a licensed psychologist or physician, and therefore is not an acceptable medical source for purposes of diagnosing a medically determinable impairment.  20 C.F.R. § 416.913; *see infra* at section B.  Rather, these providers

Dalley, Ph.D., and Andre Nye, M.D.  ECF No. 17 at 11.

Under the Regulations, a treating physician's opinion generally is given more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a non-examining physician's opinion.  20 C.F.R. § 416.927; *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If an ALJ rejects an uncontradicted acceptable medical source opinion, she must provide "clear and convincing" reasons for doing so.  *Lester*, 81 F.3d at 830.  If the medical opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala,* 53 F.3d 1035, 1043 (1995).

The Commissioner can meet this burden by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (*quoting Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).  Courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding a treating physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995);

appear to be mental health clinicians who assessed Plaintiff in 2001 when she sought treatment after experiencing significant emotional trauma.  Tr. 667-74.

*Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Rejection of a medical source opinion is specific and legitimate where the medical source's opinion is not supported by his or her own medical records and/or objective data. *Tommasetti v. Astrue*, 533 F.3d 1035, (9th Cir. 2008).

Inconsistencies between a physician's own notes and her conclusions is also a specific and legitimate reason to reject a contradicted treating physician's opinion. Where an examining physician's contradicting opinion is based on independent findings, it may be sufficient to reject a treating physician's opinion. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007). However, at all times, the ALJ's reasoning must be supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

### 1.  Providers Garrison and Gamez

The record shows these mental health professionals assessed Plaintiff with PTSD in November 2002, well before Plaintiff's claimed onset date and period of disability.  Tr. 671-74. However, neither provider is qualified to establish a medically determinable impairment under the Commissioner's regulations (Regulations).  20 C.F.R. § 416.913(a).  Regarding functional limitations assessed by these sources, their opinions are of limited relevance because (1) the opinions predate Plaintiff's alleged onset date by over five years, and (2) their observations and conclusions are based on a one time face-to-face interview with Plaintiff.  Tr. 666.  *See Carmickle v. Commissioner of Soc. Sec.,* 533 F.3d 1155, 1165 (9th Cir. 2008); *SSR* 06-03p at *4-5 (frequency of contact with claimant a factor to consider in weighing other medical source opinions).  Therefore, the ALJ was not obliged to discuss or explain

the weight given to this non-probative evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (1984).

### 2. Dr. Mitchell

Plaintiff also contends the ALJ erroneously rejected the opinions of Dr. Mitchell, a medical doctor, who evaluated Plaintiff in March 2004. Tr. 266-67. As noted by Plaintiff, Dr. Mitchell diagnosed moderate major depression with chronic leg pain. Tr. 265-66. She opined Plaintiff was restricted in her mobility and flexibility "due to pain," noting that pain exacerbated Plaintiff's depression. Tr. 265. Medication and counseling were recommended. Tr. 266-67. The ALJ's step two findings of depression and pain as severe impairments do not conflict with this medical evidence and are supported by other medical evidence that relates to the period of claimed disability. Tr. 14. Therefore, the ALJ was not required to reject these opinions. Regarding limitations, however, Dr. Mitchell's one time evaluation predates the claimed period of disability by almost three years and is not sufficiently relevant for consideration in assessing Plaintiff's RFC in these proceedings. The ALJ was not required to explain weight given or reasons for disregarding Dr. Mitchell's opinions regarding functional limitations. *Vincent*, 739 F.2d at 1395.

### 3. Dr. Goodwin

In 2006, Dr. Goodwin diagnosed major depression disorder and pain disorder, with a "rule out" diagnosis of PTSD. Tr. 225. Although Plaintiff was evaluated multiple times thereafter by licensed psychologists, as discussed below, there is no substantial evidence from an acceptable medical source to establish a clear diagnosis of PTSD that lasted until Plaintiff's application for

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

1   disability benefits.   The fact that non-acceptable medical sources
2   in the record assessed PTSD is not sufficient to establish a
3   medically determinable mental impairment.   20 C.F.R. § 416.913.
4   Because no relevant or probative evidence supports Dr. Goodwin's
5   "rule out" PTSD diagnosis, the ALJ was not obliged to credit or give
6   reasons for rejecting the rule out diagnosis.   The ALJ did not err
7   in excluding PTSD as a medically determinable impairment at step
8   two.

9       Regarding marked and severe functional limitations assessed by
10  Dr. Goodwin in May 2006, the record shows he did not expect her
11  condition to last more than six months; therefore, those opinions
12  are not relevant to Plaintiff's claimed period of disability and the
13  ALJ was not required to discuss or give weight to Dr. Goodwin's
14  outdated assessment of limitations.   Tr. 227-26.

15      **4.   Dr. Dalley**

16      The record shows Dr. Dalley and his associates at Behavioral
17  Assessments and Counseling evaluated Plaintiff in September 2003 and
18  September 2006.   Tr. 283-88, 278-82.   In 2003, based on interview,
19  objective testing, and observation, Dr. Dalley diagnosed major
20  depressive disorder (recurrent and moderate) and borderline
21  personality disorder.   Tr. 287.   Because Dr. Dalley's observations
22  and test results in 2003 reflect Plaintiff's condition many years
23  before Plaintiff's application for benefits in 2008, findings in
24  this report have limited relevance in these proceedings, and the ALJ
25  was not required to discuss them.   *Vincent*, 739 F.2d at 1395.

26      In September 2006, Dr. Dalley and associates evaluated
27  Plaintiff again, also based on interview, objective testing and
28  observation.   Tr. 308-20.   They maintained the diagnosis of major

depressive disorder (recurrent and moderate), and found a pain disorder associated with psychological factors and her medical condition. Dr. Dalley did not endorse a diagnosis of borderline personality disorder or PTSD. Tr. 281. The ALJ did not err in accepting only Dr. Dalley's 2006 diagnoses of major depression and pain, conditions that were referenced by medical sources and mental health therapists who treated Plaintiff during the claimed period of disability. *See, e.g.*, Tr. 302-03, 324-25, 441-45, 466. The ALJ's step two findings of depression and back and leg pain are supported by Dr. Dalley's diagnoses and other substantial evidence in the record. *See e.g.*, Tr. 351, 362.

Regarding the functional limitations assessed by Dr. Dalley in 2006, Plaintiff argues these limitations should have been discussed and given weight because there is no evidence that her condition improved after Dr. Dalley's evaluation. ECF No. 17 at 12. This argument is without merit. In steps one through four of the sequential evaluation process, the burden is on Plaintiff to show she is disabled. To obtain SSI benefits, Plaintiff must prove that she was disabled for "twelve continuous months," after her alleged onset date. 20 C.F.R. § 416.909, .920(c). As is the case with a diagnosis, evidence of limitations on a claimant's ability to work that predates Plaintiff's alleged period of disability "[is] of limited relevance." *Carmickle,* 533 F.3d at 1165. Dr. Dalley's 2006 functional limitations, standing alone, are insufficient to meet Plaintiff's burden; thus, it was neither unreasonable nor legal error for the ALJ to disregard functional limitations that were assessed well before January 2008. *Id.* (*citing Allen v. Heckler*, 749 F.2d, 577, 579 (9th Cir. 1985)(ALJ's rational interpretation of

1  evidence will not be disturbed by reviewing court).  The ALJ did not

2  err in disregarding functional limitations assessed by Dr. Dalley

3  and associates in 2006.

4      **5.  Dr. Nye**

5      The record includes evaluations and treatment notes from Dr.

6  Nye at the Moses Lake Clinic between 2004 and 2008.  Tr. 206-09,

7  259, 361-80, 438-39.  While medical evidence prior to 2007, (one

8  year before Plaintiff's alleged disability onset date) is of limited

9  relevance, it is noted that in 2004 after Plaintiff injured her

10 back, Dr. Nye opined Plaintiff could not work at her job as a

11 janitor until she had an opportunity to see a neurologist and/or her

12 back condition was resolved.  Tr. 259.

13     In 2005, the neurologist to whom Plaintiff was referred

14 reported that imaging reports revealed "mild disc changes and

15 foraminal involvement."  Tr. 223.  He indicated MRI results provided

16 no objective evidence of nerve root involvement or "clear cut

17 abnormalities."   Tr. 222.   Thus, the record shows objective

18 evidence did not establish conclusively a severe medically

19 determinable impairment at that time, and the ALJ was not required

20 to discuss or give weight to Dr. Nye's early, non-probative

21 findings.

22     As found by the ALJ, the record includes notes from March 2007

23 when Plaintiff was examined by Wing C. Chau, M.D., who opined she

24 was capable of medium work.  Tr. 17, 330.  De novo review reveals

25 that in May 2007, Dr. Chau re-examined Plaintiff and noted no

26 evidence of lumbar radiculopathy.  Tr. 345.  During followup visits

27 in 2007, Dr. Chau noted pain behavior, but electrodiagnostic studies

28 were negative for radiculopathy and within normal limits.  He also

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

noted Plaintiff was responsive to medication.  Tr. 344-45.  By November 2007, Dr. Chau observed Plaintiff was doing well.  However, in February 2008, she was discharged from the clinic due to concerns about medication misuse and failure to attend scheduled appointments.  Tr. 342.

Dr. Nye's May 2008 treatment notes indicate Plaintiff was showing good response to her medication.  He assessed no agility or mobility limits on examination and recommended an orthopedic evaluation and psychiatric medications.  Tr. 413-14.  He opined symptoms from depression and anxiety and her left knee derangement would significantly interfere with her ability to perform one or more basic work activities.  Tr. 414.  Although Dr. Nye opined that Plaintiff could not work at the time of his exam, he indicated she could pursue work activities immediately after she received the recommended treatment.  Tr. 363.

The ALJ briefly discussed medical evidence from Dr. Nye and Dr. Chau and made findings supported by substantial evidence.  For example, she referenced Dr. Chau's and Dr. Nye's more recent reports, including MRI results that verified degenerative changes, but no involvement of nerve roots.  Tr. 16-17.  Consistent with Dr. Nye's 2004 opinion that Plaintiff could not return to her job, the ALJ found Plaintiff could no longer perform her past relevant work. Tr. 20.  Noting that some treatment notes related to a period prior to the claimed period of disability, she pointed out that Dr. Chau's March 2007, physical evaluation showed Plaintiff exhibited normal muscle strength, and normal gait.  Tr. 16, 329-31.  She also noted that in October 2007, Medicaid for physical impairments was denied due to insufficient evidence of a severe physical problem.  Tr. 17.

The ALJ thus properly considered medical evidence from Plaintiff's treatment providers that is relevant to Plaintiff's claim.  Tr. 17. *See* 20 C.F.R. § 416.912 (d)(once medical evidence is provided by the claimant, the agency develops a claimant's medical history for at least the 12 months preceding the date of application).

The ALJ then discussed Dr. Nye's 2008 report and diagnoses along with treatment notes from the Moses Lake Community Health Center (MLCHC).  However, she did not reject "marked" physical limitations assessed by Dr. Nye during this time. *See* Tr. 18, 378-80.  Because Plaintiff's alleged onset date was amended to January 7, 2008, Dr. Nye's 2008 report and findings are entirely relevant and, as indicated in the Regulations, should have been considered by the ALJ.  20 C.F.R § 416.927(b) and (c).

Specifically, the ALJ briefly summarized the 2008 findings, but did not reject Dr. Nye's opinions that Plaintiff would have significant limitations due to depression and knee derangement.  Tr. 379.  Even though there are circumstances in which a reviewing court can infer findings and conclusions from an ALJ's summary of the evidence, *Magallanes,* 881 F.2d at 755, where there are significant limitations assessed by an acceptable medical source who has treated a claimant as long as Dr. Nye has treated Plaintiff, without specific and legitimate reasons for disregarding his opinions, the court is unable to determine if the ALJ's final RFC determination is supported by substantial evidence.  Tr. 18.  Further, even if there is evidence to support the ALJ's ultimate finding of disability, her decision must be free of legal error. *See Tackett,* 180 F.3d at 1097 (reviewing court may reverse ALJ's denial of disability where findings are based on legal error); *Brawner*, 839 F.2d at 433.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

Here, the ALJ's failure to fully discuss and explain the weight given Dr. Nye's opinions cannot be disregarded by the court. *See* 20 C.F.R. § 416.927 (b),(c)(2).   Further, the court may neither substitute its judgment for that of the Commissioner, nor make independent findings to justify the unexplained rejection of a Dr. Nye's opinions; it is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Failure to set forth specific, legitimate reasons supported by substantial evidence for disregarding a treating physician's report and findings is reversible error. *Orn*, 495 F.3d at 630-33.

**B.   Other Medical Source Opinions: 20 C.F.R. § 416.913(d)**

Plaintiff next argues the ALJ's rejection of other medical source opinions was not legally sufficient.   ECF No. 17 at 14. Specifically, she contends the ALJ failed to give "specific" and "germane" reasons for disregarding opinions from her physician's assistant, Joy Becker, PA-C, and mental health counselors Roberta Hansen, MSW, Debra Kietzman, RNC, and Dawn Wilcox, MSW. *See, e.g.*, Tr. 237-39, 302-03, 324-25, 441-45, 466.

The Regulations define "other medical sources" as medical providers who are not "acceptable medical sources," but whose opinions are considered to determine how an impairment affects a claimant's ability to work. 20 C.F.R. § 416.913(d).[3]  Although only acceptable medical sources can provide evidence to establish a

---

[3]  Acceptable medical sources for purposes of these proceedings include licensed physicians, licensed or certified psychologists, optometrists, podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 416.913(a).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

medically determinable impairment, an ALJ is required to consider observations by other medical sources, such as nurse practitioners, mental health professionals and physician assistants as to how an impairment affects a claimant's ability to work. *Sprague*, 812 F.2d at 1232. An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  In addition, the Commissioner has directed that weight given to other medical source opinions must be evaluated on the basis of certain factors, *e.g.,* their professional qualifications, how consistent their opinions are with the other evidence, the amount of evidence provided in support of their opinions, whether the other source opinion is well explained, and whether the other source "has a specialty or area of expertise related to the individual's impairment." *SSR* 06-03p.  An adjudicator may consider these factors in giving an other medical source opinion more weight than that of an acceptable medical source. *Id*.

The Commissioner also advises that an adjudicator should explain the weight given to other medical source opinions or "otherwise ensure that the discussion of the evidence . . . allows . . . the subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*.  Here, the ALJ's one paragraph summary of Ms. Kietzman's May 2007 evaluation does not explain adequately the weight given her opinions or why severe and marked limitations in cognitive and social functions were discounted or rejected.  Tr. 17, 238. Evidence from Ms. Hansen and Ms. Becker, both of whom had ongoing contact with Plaintiff, is also probative and must be considered and

rejected only by specific and germane reasons that will allow the court to determine if the ALJ's RFC determination is legally sufficient.   Although the opinions of a non-acceptable medical source are not afforded controlling weight, the ALJ's failure to properly evaluate their opinions combined with her failure to properly reject Dr. Nye's opinion is prejudicial to the Plaintiff and, therefore, not harmless error. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).   On remand, the ALJ will consider all other medical source reports and progress notes as directed by *SSR* 06-03p, and give specific reasons for rejecting or discounting their findings.   Further, the ALJ is required to consider in combination all impairments and limitations (mental and physical) supported by substantial evidence.   20 C.F.R. § 416.945(a)(2).   The assistance of a medical expert may assist the ALJ in determining the nature and severity of Plaintiff's and their impact on Plaintiff's ability to perform work. *See* 20 C.F.R. § 416.927(e)(2)(iii).

**C.   Duty to Develop Record**

Plaintiff argues the ALJ had a duty to develop the record by ordering a psychological evaluation based on an agency psychologist's finding in the May 2008 Psychiatric Review Technique Form (Tr. 382) that there was "insufficient evidence" to determine the level of severity for purposes of steps two and three.   ECF No. 17 at 17.

Generally, an ALJ's duty to supplement the record is triggered by ambiguous evidence or when the record is inadequate to properly evaluate the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).   It is within the ALJ's discretion to develop the record

if additional evidence is necessary to resolve a conflict or clear up any ambiguity in the record.  The claimant must show prejudice or unfairness in the proceedings to be entitled to a remand.  *Hall v. Secretary of Health, Ed. and Welfare*, 602 F.2d 1372 (9th Cir. 1979).

The record shows that in May 2008, reviewing psychologist Jerry Gardner, Ph.D., completed a Psychiatric Review Technique Form (PRTF) and concluded Plaintiff had the medically determinable impairment of major depression, moderate recurrent, based on Dr. Dalley's 2006 evaluation.  Tr. 382-95.  His reference to "insufficient evidence" relates to Plaintiff's failure to attend a consultative psychological evaluation in April 2008 that was ordered by the agency and would be a basis for determining step two and step three findings of the degree of functional severity.  Tr. 392, 394; *see* 20 C.F.R. § 416.920(a).  Because Dr. Gardner found insufficient evidence to rate Functional Limitations (criteria "B"), the severity of diagnosed depression for purposes of steps two and three was not assessed at that time.  Tr. 392.  The ALJ, however, reasonably adopted the Dr. Dalley's and Dr. Gardner's diagnosis of depression at step two and found depression was "severe," based on the record in its entirety.  Further, the ALJ appropriately applied the required evaluation technique in his decision.  Tr. 14.  *See* 20 C.F.R. § 416.920a(e)(4)(at ALJ hearing, the written decision must incorporate PTR findings after consideration of the entire record).

Plaintiff's argument that her failure to attend the consultative evaluation or respond to the agency's efforts to contact her triggers the ALJ's duty to develop the record by ordering a second psychological evaluation is unpersuasive.  Not only does a post-hearing psychological evaluation have limited, if

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

any, probative value at this time, the existing record contains evidence from medical providers dated after May 2008 through the date of the decision that, as discussed above, include functional limitations that will be discussed and re-evaluated by the ALJ on remand.   By the time of the March 2010 hearing, the ALJ had a complete record and did not identify an ambiguity or inadequacy that would trigger development of the record.   She made sufficient findings at steps two and three, based on Dr. Gardner's PRTF and the entire record, to satisfy the requirements of 20 C.F.R. § 416.920a(e)2).   Nonetheless, if Plaintiff has records that relate to her alleged period of disability and the 12 months prior to her application for benefits, she may supplement the record on remand.

**D.   Remedy**

Where evidence exists that may be a basis for rejecting a medical opinions and other source opinions, the court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989); *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990).   Here, the ALJ failed to articulate her reasons for disregarding medical opinions; however, it appears there may be evidence to support specific and legitimate reasons for discounting the medical opinions at issue.   Further, there are outstanding issues to be resolved regarding whether Plaintiff's functional limitations supported by the record preclude other work in the national economy. *See Smolen*, 80 F.3d 1273, 1292 (9th Cir. 1996)(remand for additional proceedings appropriate where outstanding issues unresolved).   On remand, the ALJ may call a medical expert to assist in (1) interpreting the objective medical

evidence presented, and (2) assessing Plaintiff's impairments in combination. *Andrews,* 53 F.3d at 1041. Based on the ALJ's re-evaluation of the medical opinions and supplemental records submitted by Plaintiff, if any, a new RFC determination will be required and, if necessary, new step five findings.   Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings consistent with this decision and pursuant to sentence four of 42 U.S.C. § 405(g).

2.   Defendant's Motion for Summary Judgment **(ECF No. 27)** is **DENIED.**

3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff**, and the file shall be **CLOSED.**

DATED April 16, 2013.

                    S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 19